**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KARLTON A. MAYDWELL,** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 3:19-cv-00051-S** |
| **vs.** | § | |
| | § | |
| | § | |
| **CIARA FINANCIAL SERVICES, INC. dba** | § | |
| **CLAY COOLEY AUTO GROUP** | § | |
| **Defendant** | § | |
| | § | |

---

**DEFENDANT CIARA FINANCIAL SERVICES, INC.'S FIRST ORIGINAL ANSWER,
AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Comes now Ciara Financial Services, Inc. ["Ciara], improperly named in Plaintiff's Complaint as "Ciara Financial Services Inc. d/b/a Clay Cooley Auto Group," and in response to Plaintiff's Complaint ["Complaint"], files this, **Defendant Ciara Financial Services, Inc.'s First Original Answer, Affirmative Defenses And Counterclaim.** Defendant Ciara would show the Court as follows:

**NATURE OF THE ACTION**

1.    Ciara admits that Plaintiff brings an action for damages. Ciara denies that the action is properly brought pursuant to the Telephone Consumer Protection Act, or the Texas Debt Collection Act or the Texas Finance Code. Ciara denies that Defendant's conduct was unlawful.

---

**JURISDICTION AND VENUE**

2.      Ciara denies that legal authority exists for assertion of Plaintiff's cause or cause of action pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 et seq.    Ciara denies that subject matter jurisdiction exists in this Court for claims asserted pursuant to the TCPA.   Because subject matter jurisdiction cannot be invoked under the TCPA, Ciara denies that 28 U.S.C. §§1331 and 1337 can be invoked as a basis for jurisdiction.  Ciara denies that Plaintiff's action arises under the laws of the United States.  Ciara denies that supplemental jurisdiction exists for Plaintiff's state law claim.

3.      Ciara admits that it conducts business in the Northern District of Texas and that events or omissions which form the factual basis of Plaintiff's claims relate to conduct which occurred in the Northern District of Texas.  However, Ciara denies that venue is proper in this Court because the Court lacks subject matter jurisdiction.

**PARTIES**

4.      Ciara admits that Plaintiff is over the age of 18 years. Ciara  lacks knowledge or information sufficient to form a belief about  whether Plaintiff  qualifies as a "consumer" as alleged in Paragraph 4, and therefore must deny such allegation. Ciara admits that Dallas County, Texas is located within the Northern District of Texas.

5.     Ciara  admits the truth of the allegations in Paragraph 5 of the Complaint.

6.     Ciara  admits the truth of the allegations in Paragraph 6 of the Complaint.

7.     Ciara admits the truth of the allegations in Paragraph 7 of the Complaint.

8.     Ciara  admits that it acted through its agents, employees, officers, members and

       directors.  To the extent that that remaining allegations of Paragraph 8 allege that

       Ciara acted through any other persons or entities, the allegations are vague and

       non-specific, and Ciara lacks knowledge or information to form a belief about the

       truth of such remaining allegations, and must therefore deny same at this time.


                          FACTS SUPPORTING CAUSES OF ACTION

9.     Ciara denies that Plaintiff originally financed the purchase of his motor vehicle

       through Ciara.  Ciara admits through a process of assignment and transfer, Ciara

       later became the financier of the Plaintiff's motor vehicle.  To the extent that the

       allegations of Paragraph 9 imply, suggest, or alleges any factual matter beyond the

       foregoing admissions,  Ciara denies such allegations.


10.    Ciara lacks knowledge or information sufficient to form a belief about  whether

       Plaintiff experienced financial hardship, and therefore must deny such allegation.

       Ciara admits that Plaintiff fell behind on his scheduled payments.  Ciara admits

       that payments were owed to Ciara.  Ciara admits that Plaintiff incurred a debt for

       the finance of his motor vehicle.  To the extent that the allegations of Paragraph 10

imply, suggest, or alleges any factual matter beyond the foregoing admissions, Ciara denies such allegations.

11.   Ciara admits that it made lawful calls to Plaintiff for the purpose of seeking to collect an outstanding and unpaid debt which was owed by Plaintiff.  Because Plaintiff's allegations about a specific phone number are incomplete, Ciara lacks knowledge or information sufficient to form a belief about  whether such allegations are true or correct and therefore must deny same.  To the extent that the allegations of Paragraph 11 imply, suggest, or alleges any factual matter beyond the foregoing admissions,  Ciara denies such allegations.

12.   Ciara lacks knowledge or information sufficient to form a belief about  whether the allegations of Paragraph 12  are true or correct and therefore must deny same.

13.   Ciara admits that it uses the phone number (972) 573-6481 and other phone numbers.  Ciara lacks knowledge about whether Plaintiff's phone is a cellular phone.  Ciara therefore must deny such allegations.  To the extent that the allegations of Paragraph 13 imply, suggest, or alleges any factual matter beyond the foregoing admissions,  Ciara denies such allegations.

14.   Ciara admits that it regularly uses the phone number (972) 573-6481.

15.   Ciara admits that it uses prerecorded messages in telephone calls to seek debt collection,  Ciara lacks knowledge or information sufficient to form a belief about whether the remaining  allegations of Paragraph 15  are true or correct and therefore must deny same.

16. Ciara lacks knowledge or information sufficient to form a belief about  whether the allegations of Paragraph 16  are true or correct and therefore must deny same.

17. Ciara admits that it informs debtors, including Plaintiff in this action, that Ciara is engaged in the business of attempting to collect on a debt.

18. Ciara admits that on more than one occasion Plaintiff promised to pay specific amounts at specific times, although Plaintiff later failed to follow through with such promises.  Ciara admits that on more than one occasion Plaintiff made oral demands that calls to his phone should cease, although Plaintiff failed to follow procedures for submission of a written demand.  To the extent that the allegations of Paragraph 18 imply, suggest, or allege any factual matter beyond the foregoing admissions,  Ciara denies such allegations.

19. Ciara admits that on more than one occasion Plaintiff made oral demands that calls to his phone should cease, although Plaintiff failed to follow procedures for submission of a written demand.  To the extent that the allegations of Paragraph 19 imply, suggest, or allege any factual matter beyond the foregoing admissions, Ciara denies such allegations.

20. Ciara denies the truth of the allegations set forth in Paragraph 20.

21. Ciara admits the truth of the allegations set forth in Paragraph 21.

22. Ciara admits that on more than one occasion Plaintiff made oral demands that calls to his phone should cease, although Plaintiff failed to follow procedures for submission of a written demand.  To the extent that the allegations of Paragraph 19 imply, suggest, or allege any factual matter beyond the foregoing admissions, Ciara denies such allegations.

23. Ciara lacks knowledge or information sufficient to form a belief about whether the allegations of Paragraph 23 are true or correct and therefore must deny same.

24. Ciara denies the truth of the allegations set forth in Paragraph 24.

25. Ciara lacks knowledge or information sufficient to form a belief about whether the allegations of Paragraph 25 are true or correct and therefore must deny same.

## COUNT I—VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

26. Paragraph 26 of the Complaint does not include factual allegations which must be admitted or denied.

27. Ciara denies that the TCPA, 47 USC § 227 et seq, prohibits creditors and their loan servicers from making telephone calls to individuals on cellular telephones for the purpose of making attempts to collect debts. To the extent that Paragraph 27 states or alleges any such statement as a purported matter of fact, same is denied. Ciara denies that Paragraph 27 is a correct factual statement of law. To the extent that the allegations of Paragraph 27 imply, suggest, or alleges any factual matter beyond the foregoing that is outside the foregoing denial, Ciara denies such allegations as well.

28. Ciara admits that it uses pre-recorded messages in connection with its telephone messages to debtors, including Plaintiff. Ciara admits that it uses equipment which has the capacity to store or produce telephone numbers to be called. To the extent that the allegations of Paragraph 28 imply, suggest, or alleges any factual

matter beyond the foregoing  that is outside the foregoing denial,  Ciara denies allegations as well.

29. Ciara denies that it violated the TCPA.  Ciara denies that the use of multiple calls with the use of computerized equipment is a violation of the TCPA, when the calls are for the purpose of attempted debt collection.  Ciara admits that it may make multiple calls to collect debt.  Ciara admits that the number of calls made to Plaintiff over time may exceed 150.  To the extent that the allegations of Paragraph 29 imply, suggest, or alleges any factual matter beyond the foregoing  that is outside the foregoing admissions or denials,  Ciara denies such allegations as well.

30. Ciara admits that the calls which it placed to Plaintiff were for the purpose of debt collection.  Ciara admits that there was no emergency associated with its calls.  To the extent that the allegations of Paragraph 30 imply, suggest, or alleges any factual matter  that is outside the foregoing admissions or denials, Ciara denies allegations as well.

31. Ciara denies that it is liable to Plaintiff for any monetary amount under the TCPA.  To the extent that the allegations of Paragraph 31 imply, suggest, or alleges any factual matter that is outside the foregoing denial,  Ciara denies such allegations as well.    The prayer which follows Paragraph 31 in the Complaint does not contain factual allegations which must be admitted or denied.

## COUNT II—VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT

32. Paragraph 32 of the Complaint does not include factual allegations which must be admitted or denied

33. Ciara  lacks knowledge or information sufficient to form a belief about  whether Plaintiff  qualifies as a "consumer" under the Texas Finance Code, and therefore must deny the allegations of Paragraph 33.

34. Ciara admits that Ciara is a debt collector.

35. Ciara lacks knowledge or information sufficient to form a belief about  whether Plaintiff's debt qualifies as a "consumer debt" under the Texas Finance Code, and therefore must deny the allegations of Paragraph 35.

36. Paragraph 36 of the Complaint  is a quotation of statutory state law and does not include factual allegations which must be admitted or denied.

37. Ciara denies that it violated the TDCA.     To the extent that the allegations of Paragraph 37 imply, suggest, or alleges any factual matter in addition to the foregoing denial,  Ciara denies such allegations.

38. Ciara denies that it had any factual reason or notice that it should not call Plaintiff to attempt to collect a debt that was owed.  To the extent that the allegations of Paragraph 8  imply, suggest, or alleges any factual matter beyond the foregoing admissions,  Ciara denies such allegations.

39. Paragraph 39 of the Complaint  is a quotation of statutory state law and does not include factual allegations which must be admitted or denied

40. Ciara denies that it violated the TDCA.     To the extent that the allegations of Paragraph 40 imply, suggest, or alleges any factual matter in addition to the foregoing denial,  Ciara denies such allegations.

### FIRST DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The claims which Plaintiff states or attempts to state do not fall within the subject matter jurisdiction of this Honorable Court.

### THIRD DEFENSE

Plaintiff fails to state a claim upon which relief can be granted with respect to the allegations of Count 1 of Plaintiff's Complaint.

### FOURTH DEFENSE

Plaintiff has suffered no damages as a result of any acts or omissions of Ciara.

### FIFTH DEFENSE

Ciara states that it received prior express consent to contact Plaintiff on his cell phone.

### SIXTH DEFENSE

Ciara would show that its actions are exempted from the provisions of the Telephone Consumer Protection Act, pursuant to the provisions of 47 USC § 277 (b)(1)(B).

### SEVENTH DEFENSE

Ciara would show that an award of statutory damages in the absence of actual damages would be a denial of Ciara's right to due process under the Constitution of the United States of America.

### EIGHTH DEFENSE

Any  damage suffered by Plaintiff, which Ciara denies, was due to the affirmative actions and/or omissions of Plaintiff or others, and does not give rise to any claim of damages against Ciara.

### NINTH  DEFENSE

Ciara's  actions were not willful or knowing, to the extent they violated applicable law, which Ciara denies.

### TENTH  DEFENSE

Ciara affirmatively asserts  that Plaintiff  is not entitled to the relief sought due to the doctrines of waiver, estoppel, laches and unclean hands.

### ELEVENTH  DEFENSE

Ciara  affirmatively asserts that it is entitled to recovery its reasonable  and necessary attorney's fees incurred in the defense of  Plaintiff's claims.

### FIRST ORIGINAL COUNTERCLAIM OF CIARA FINANCIAL SERVICES, INC.

### PARTIES, VENUE AND JURISDICTION

41. Counter Plaintiff is Ciara Financial Services, Inc., ["Ciara"] which is the owner of the claims asserted herein.  Ciara has appeared.

42. Counter Defendant is Karlton Maydwell ["Maydwell"], who has appeared as well.

43. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1367.

44. Venue is proper in the Northern District of Texas, Dallas County Division because the claims of Maydwell have been asserted in said district and division. Additionally, venue is proper because Counter-Defendant Maydwell is domiciliary of Dallas County, Texas.

## STATEMENT OF THE COUNTERCLAIM

45. This First Original Counter Claim presents a claim for unpaid debt, breach of contract, quantum meruit,  and actual and consequential damages, all arising from Karlton Maydwell's failure to perform obligations of payment as set forth in his Motor Vehicle Retail Installment Sales Contract for the purchase of a 2010 Chrysler Sebring motor vehicle  from Clay Cooley Enterprises, Inc dba Clay Cooley Motor Company, on or about June 16, 2014 in Dallas County, Texas. Ciara Financial Services, as Counter-Plaintiff, would show this Honorable Court as follows in support of its claim against Counter-Defendant Karlton Maydwell.

46. On or about June 16, 2014, Karlton Maydwell purchased the above-described motor vehicle, which Maydwell's counsel frequently refers to as the "subject automobile," from   an automobile dealership located in Dallas, County, Texas and known as Clay Cooley Enterprises, Inc. dba Clay Cooley Motor Company.

47. As of the purchase date, the original entity serving  as lender  was Clay Cooley Enterprises, Inc. dba Clay Cooley Motor Company.  On or about December 24, 2016, the loan was assigned and/or transferred to Chase Financial Services, Inc., which later became known as Ciara Financial Services.  Consequently,

while Ciara Financial Services was not the original lender  of purchase money funds for the finance of Maydwell's motor vehicle, through the process of assignment or loan transfer, Ciara became the lender as of December 24, 2016.

48. Maydwell became obligated pursuant to the terms of his Motor Vehicle Retail Installment Sales Contract to make 47 monthly payments of  $480.00 and one final payment of $441.23 on an original loan with a financed amount of $15,615.30.  Maydwell made sporadic and frequently late monthly payments, up until and through his last submitted payment which was received on July 31, 2017.  Thereafter, Maydwell's loan went into default, and it became necessary for Ciara Financial Services, Inc. to initiate debt collection efforts.

49. Ciara initiated debt collection efforts, first in an attempt to recoup outstanding and overdue monthly payments, and later in an attempt to recover the motor vehicle which secured the loan by means of a title lien.   Ciara was given permission and consent to contact a telephone number, which is partially identified by Plaintiff as "682-XXX-4331."   The telephone number was not identified in any specific way, and no indication was provided by Maydwell that the number was associated with a cellular telephone.  Likewise, no indication was given by Maydwell when the number was provided that Ciara should be allowed to call the number to discuss matters regarding Maydwell's loan.

50. Over the next several ensuing months, Ciara made regular routine debt collection efforts by telephone, including calls from Ciara to the number partially identified by Plaintiff as "682--XXX-4331."   Ciara employs industry custom standards of debt collection by telephone, including the use of automated

redialers, because such equipment and technology is specifically permitted by current regulations of the Federal Communications Commission, all as authorized by 14 USC § 277 et seq.   Ciara's conduct was both lawful and according to industry standards, because all calls made by Ciara to Maydwell were made for the specific commercial purpose of seeking to recover an unpaid debt.

51. Maydwell engaged in discourteous and impolite conduct.  He frequently swore when speaking to live debt counselors.  He shouted;  he raised his voice;  he threatened to hide the motor vehicle where no one could find it.  Maydwell's motor vehicle was altered during the period of debt collection efforts, to the extent that the GPS device no longer functioned, and the vehicle could not be traced with GPS technology.  At one point Maydwell pretended to work as a skip tracer, which is an occupation which seeks to identify vehicles subject to overdue loans by various means.  Maydwell attempted to collect a finder's fee by offering to provide information about where his vehicle was located.

52. Eventually, the vehicle was located.  Maydwell removed all of the vehicle's tires and wheels, parked it on bare wheel hubs in his driveway, and told Ciara to come and get it.

53. At the time Maydwell's motor vehicle was recovered, it had been substantially damaged, including total loss of the engine, which had been allowed to run short of oil.  The vehicle was sold at auction.

54. Exhibit B attached to this First Original Counter Claim is a true and correct copy of the Motor Vehicle Retail Installment Sales Contract.

55. Exhibit C attached to this First Original Counter Claim is a true and correct copy of the IDMS Transactions for Account #174458 Maydwell, Karlton.  Exhibit C sets fort a statement of each unpaid monthly loan amount, followed by a true and correct calculation of all service fees associated with late or missing payments, or other contractual amounts due and owing by reason of non-performance of Maydwell pursuant to the terms of his Motor Vehicle Retail Installment Sales Contract, or according to extended arrangements otherwise made as a part of the debt collection process.

56. Exhibit D attached to this First Original Counter Claim is a true and correct copy of the a summary of additional consequential damages associated with efforts to recover the motor vehicle from Karlton Maydwell, in addition to a photocopy of a check for sale of the motor vehicle at auction.  The information provided in Exhibit D has been used to calculate Counter-Plaintiff's claim for consequential damages, and to acknowledge a credit for the proceeds of sale at auction.

57. As of the date of the filing of this First Original Counterclaim, the total outstanding indebtedness which is due and owing by Maydwell on account of his failure to make payments when due pursuant to his Motor Vehicle Retail Installment Sales Contract   is **$12,938.58**, which includes all unpaid indebtedness in addition to damages for expenses associated with collection of the unpaid debt and recovery of the motor vehicle as collateral.

58. All of such actual and consequential damages were caused in fact, or alternatively proximately caused by the conduct of Maydwell.  All of Maydwell's

conduct in failing to make payments, hiding the motor vehicle, and causing damage to the vehicle were breaches of contract pursuant to the terms of the Motor Vehicle Retail Installment Sales Contract.

59. In its capacity as assignee and current authorized lender with respect to the loan to Maydwell, Ciara is entitled to recover actual and consequential damages as above alleged.

60. By this First Original Counterclaim, Ciara gives notice pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code of its claim for recovery of reasonable and necessary attorney's fees incurred with respect to its assertion of this claim for recovery pursuant to the Motor Vehicle Retail Installment Sales Contract.

## COUNTERCLAIM COUNT 1:  BREACH OF THE
## MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT

61. The foregoing allegations of this First Original Answer, Affirmative Defenses, and Counterclaim  are incorporated by reference. This cause of action is asserted against Counter-Defendant Karlton Maydwell.  Count 1 presents a claim for breach of a written Motor Vehicle Retail Installment Sales Contract, Exhibit B.

62. Ciara would show that it is entitled to recover damages for breach of such written contract, a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by reference as if fully set forth verbatim.

63. On or about June 16, 2014, Maydwell entered into a valid and enforceable "Motor Vehicle Retail Installment Sales Contract and Security Agreement" [hereafter, the "Contract"].  Pursuant to the terms of the Contract, in exchange for the receipt and delivery of a motor vehicle identified as a 2010 Chrysler Sebring, Maydwell promised to pay the sum of $ 15,615.30 with interest at the rate of  20.38 % per annum, in 47 monthly payments of  $480.00 and 1 final payment of $441.23, beginning on or about July 20, 2014 and continuing  for 48 months, with the last scheduled payment date being June 20, 2018.

64. Clay Cooley Enterprises, Inc. dba Clay Cooley Motor Company assigned the Contract to  Chase Financial Services, Inc. on or about December 31, 2014.  Chase Financial Services, Inc. perfected a legal name change through filings with the Texas Secretary of State to become known as Ciara Financial Services, Inc., ["Ciara"] effective July 1, 2015.  Ciara is and was at all times germane to the claims asserted herein, the owner of the Contract and claims arising out of it.

### COUNTERCLAIM COUNT 2:  SUIT ON SWORN ACCOUNT

65. The foregoing allegations of this First Original Answer, Affirmative Defenses, and Counterclaim  are incorporated by reference. This cause of action is asserted against Counter-Defendant Karlton Maydwell.  Count 2 presents a claim for suit upon a sworn account.

66. Pleading further, and in the alternative, Ciara would show that it is entitled to recover damages under an action for suit on a sworn account.   The predecessors in interest of Ciara provided goods to Maydwell on an account.

Maydwell accepted those goods and therefore became bound to pay Ciara its designated charges, which were reasonable, usual and customary for such goods and in accordance with the Contract.  The sworn account represents a record of the transaction  that is like or similar to records  which Ciara usually and customarily keeps in the regular and ordinary course of its business.

67. After the goods were delivered to Maydwell as evidenced by Exhibit A, the Motor Vehicle Retail Installment Sales Contract, Maydwell  immediately fell into a pattern of making late payments.  Maydwell's very first payment, which was due on July 20, 2014, was received four days late, on July 24, 2014.  Numerous other monthly payments were late as well.  Maydwell finally went into complete default and ceased submitting payments.  The dates and amounts of Maydwell's payments are fully accounted for and credited to the account as reflected in Exhibit A, the Affidavit of Ciara's COO Ed Hicks, Jr., and Exhibit C, the IDMS Transactions for Account #174458 Maydwell, Karlton.   Each of Exhibits A, B, C and D are attached hereto and incorporated herein by reference as if fully set forth verbatim.

68. The claim asserted in this Count 3 is just and true, and all just and lawful offsets, payments and credits have been allowed, as demonstrated by Exhibits B and C.

69. The total amount due on the account for unpaid loan amounts, including principal, interest, late fees and other amounts as of April 22, 2019 is **$14,238.58**.  This does not include consequential damages claims or a credit due for sale at auction.

70. Ciara incurred consequential damages on account of Maydwell's conduct in hiding the location of the vehicle, refusing to allow repossession, and removing the tires and wheels from the vehicle.  Ciara recognized and declared a credit due for sale of the motor vehicle at auction.  The calculation of consequential damages and credit due is as follows:

| | |
|---|---|
| $14,238.58 | Loan Charge Off (See Exhibit C, Line Item at 10/26/2018) |
| 500.00 | Replacement Tires and Wheels |
| 175.00 | Tow Charge to Auction Site |
| 14,913.58 | Total |
| -1,975.00 | Sale at Auction |
| **$12,938.58** | **Total Net Damages** |

71. Exhibit D attached hereto is a collection of receipts and other documents which support the calculation of consequential damages and credit as set forth above in Paragraph 70.

72. Ciara seeks liquidated damages in the amount of at least **$12,938.58**. Additionally, Ciara seeks recovery of pre-judgment and post-judgment interest as well as its costs of court and reasonable and necessary attorneys' fees pursuant to Texas Civil Practice & Remedies Code § 38.0001(7) and the terms of the Contract.

### COUNTERCLAIM COUNT 3:  QUANTUM MERUIT

**73.** The foregoing allegations of this First Original Answer, Affirmative Defenses, and Counterclaim  are incorporated by reference. This cause of action is

asserted against Counter-Defendant Karlton Maydwell.   Count 3 presents a claim for quantum meruit.

74. Pleading further and in the alternative, Ciara would show that it is entitled to recover damages under an action for quantum meruit.   The predecessors of Ciara provided Maydwell with goods.   The predecessors in interest of Ciara provided these goods for the use and benefit of Maydwell.   Ciara was assigned the Contract made by Maydwell and is entitled to receive all payments due pursuant to the Contact.

75. When Maydwell went into default, Ciara communicated with Maydwell lawfully for the specific purpose of seeking to collect amounts which were due and owing.   In this manner, Ciara put Maydwell on reasonable notice that Ciara expected compensation for the goods provided, all pursuant to terms of the Contract.   Maydwell has refused to pay for such goods.   Ciara attaches an affidavit verifying these facts as Exhibit A and incorporates such affidavit herein by reference as if fully set forth verbatim.

76. As a result of Maydwell's failure to pay, Ciara is entitled to recover the reasonable value of the goods provided to Maydwell, including interest accrued as a result of Maydwell's non-payment.   Maydwell also seeks recovery of pre-judgment and post-judgment interest under its claims for quantum meruit, as well as its costs of court and reasonable attorney's fees.

### ATTORNEY'S FEES

77. Ciara seeks attorney's fees pursuant to each count set forth in Ciara's Counterclaim.  As a result of Maydwell's failure to pay under the terms of the Contract, Ciara has retained the undersigned attorneys to prosecute this Counterclaims, including all counts asserted therein.  Maydwell has caused Ciara to incur to date and will continue to cause Ciara to incur in the future, costs associated with the prosecution of this litigation, including attorney's fees. The Contract provides, and Maydwell agreed:

> "COLLECTION COSTS:  If you hire an attorney who is not your employee to enforce this contract, I will pay reasonable attorney's fees and court costs as the applicable law allows."

See Exhibit B at Page 4.  Therefore, Ciara seeks payment of reasonable and necessary attorney's fees as allowed under the Contract and Tex. Civ. Prac. And Rem. Code §38.001 et seq.

78. All conditions precedent have been performed or have occurred as required by Tex. R. Civ. P. 54.

WHEREFORE, Ciara prays for orders and judgment of this Court in its favor and against Plaintiff as follows:

1. Dismissing all causes of action of Plaintiff  against Ciara  with prejudice and on the merits; and,

2. Granting judgment in favor of Ciara on each Count asserted in Ciara's Counterclaim, including Ciara's claim for breach of the Motor Vehicle Retail Installment Sales Contract, for damages and loss sustained on an open account, for damages and loss sustained on a sworn account, and for damages sustained based upon quantum meruit.  Ciara's claims

under each Count include all actual and consequential damages and
attorneys' fees as allowed by law;

3. For prejudgment and post judgment interest as allowed by law;  and

4. Awarding Ciara such other and further relief as the Court deems just
and equitable.

Respectfully submitted,

DOWNS ♦ STANFORD, P.C.

*/s/ Lynn Fielder*

By: _____
R. Lynn Fielder
State Bar No. 06088200
2001 Bryan Street, Suite 4000
Dallas, Texas 75201
Phone: (214) 748-7900
Fax: (214) 748-4530
Email: jdowns@downsstanford.com

*/s/ Rodney M. Patterson*

By: _____
Rodney M. Patterson
State Bar No. 15605300
Downs ♦ Stanford, P.C.
2001 Bryan Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 748-7900
Facsimile: (214) 748-4530
rpatterson@downsstanford.com

**Attorneys for Defendant Ciara Financial
Services, Inc.  (incorrectly named as Ciara
Financial Services, Inc. dba Cooley Auto
Group)**

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record as indicated on this the 18th day of April 2019 by electronic service.

*/s/ Rodney M. Patterson*

By: _____